UNITED STATES DISTRICT COURT
IN AND FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

|  |  |  |
|---|---|---|
| Fraserside IP, LLC, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
|  | ) | |
| Roland Waterweg d/b/a | ) | Docket No. 11-3043-MWB |
| www.eskimotube.com and www.tjoob.com, | ) | |
| and www.eskimotube.com and | ) | |
| www.tjoob.com, and John Does 1-100 | ) | |
| and John Doe Companies 1-100, | ) | |
| Defendants. | ) | |

**DEFENDANTS ROLAND WATERWEG, WWW.ESKIMOTUBE.COM AND WWW.TJOOB.COM'S MEMORANDUM OF LAW IN SUPPORT OF <u>MOTION TO DISMISS</u>**

**Table of Contents**

**Facts**.................................................................................................... 1

    **The Parties and Interested Parties**............................................................ 2

        A.    Fraserside IP
        B.    Fraserside Holdings
        C.    Private Media Group and its Receiver
        D.    Roland Waterweg

    **The Intellectual Property**........................................................................ 7

**Argument**............................................................................................... 8

    I.    **The Complaint Must Be Dismissed Because Mr. Waterweg is Not Subject To Personal Jurisdiction In Iowa**.............................. 8

    II.    **The Complaint Must Be Dismissed Because Fraserside IP Does Not Have Standing to Assert or Pursue The Present Claims**........................................................................ 14

    **Conclusion**.......................................................................................... 18

In its continuing campaign to manufacture jurisdiction over defendants in a court where none exists, Plaintiff Fraserside IP, LLC ("Fraserside IP"), a wholly-owned subsidiary of a Cyprus-based company, has brought the present action against Roland Waterweg, a resident of the Philippines, who has no connection to this forum.[1] Other than Fraserside IP itself – an entity apparently created solely to manufacture jurisdiction in Iowa – the parties (and real parties in interest) lack any ties to Iowa. In addition to the clear lack of personal jurisdiction over Mr. Waterweg, Fraserside IP's claim to the relevant intellectual property appears to be questionable at best, given that Fraserside IP's parent corporation, Fraserside Holdings, continues to assert *its* ownership over the intellectual property in sworn court filings. Additionally, to the extent that Fraserside IP claims that Fraserside Holdings (and other Private affiliates or subsidiaries) assigned to it their copyrights and patents, such assignments are likely invalid inasmuch as they appear to violate an injunction imposed by a court in the State of Nevada. Indeed, this entire litigation is apparently being conducted in contravention of a Court order placing Private Media Group and its subsidiaries and affiliates under the auspices of a receiver, who knows nothing about this – or the many other litigations – filed by Fraserside IP in this Court.

Accordingly, pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6), Fraserside IP's Complaint should be dismissed in its entirety. In further support of this memorandum, Mr. Waterweg state as follows.

## Facts

The following facts – derived from the allegations in Fraserside IP's Complaint and from

---

[1] The complaint also lists in the caption the two websites which Mr. Waterweg operates from the Phillippines, www.EskimoTube.com ("EskimoTube") and www.tjoob.com ("Tjoob"). It is unclear precisely how the Plaintiff believes that it can name a website as a defendant, given that a website is not a distinct legal entity.

1

public records[2] – are accepted as true for the purposes of this motion:

The Parties and Interested Parties

### A. Fraserside IP

The Plaintiff, Fraserside IP, is a wholly owned subsidiary of Fraserside Holdings, Ltd. ("Fraserside Holdings"), a Cyprus-based company. *See* Docket Entry No. 5.

Fraserside IP conducts no actual business – in Iowa or anywhere else – but rather appears to have been created for the sole purpose of judicial forum shopping. Indeed, in the first year of its existence, Fraserside IP has filed <u>sixteen</u> different cases in this Court. (*Fraserside IP LLC v. Slutload, et al.*, 10-cv-03066-MWB; *Fraserside IP LLC v. Youngtek Solutions Ltd, et al.*, 11-cv-03005-MWB; *Fraserside IP LLC v. IG Media Inc.*, 11-cv-03015-MWB; *Fraserside IP LLC v. Gens*, 3:11-cv-03019-MWB; *Fraserside IP LLC v. Gens*, 11-cv-03022-MWB; *Fraserside IP LLC v. WhoIsGuard, et al.*, 11-cv-03025-MWB; *Fraserside IP LLC v. Faragalla, et al.,* 11-cv-03032-MWB; *Fraserside IP LLC v. Netvertising Ltd, et al.*, 3:11-cv-03033-MWB; *Fraserside IP LLC v. Netvertising Ltd, et al.,* 11-cv-03034-MWB; *Fraserside IP LLC v. Kovalchuk*, 11-cv-03040-MWB, *Fraserside IP LLC v. Letyagin*, 11-cv-03041-MWB; *Fraserside IP LLC v. Olivero*, 11-cv-03042-MWB; *Fraserside IP LLC v. Waterweg,* 11-cv-03043-MWB; *Fraserside

---

[2] Although a Court generally cannot look at materials outside of the Complaint in considering a Motion to Dismiss, it is well established in the Eight Circuit that the Court is permitted to consider, among other things, public records, court documents, governmental records, and documents which form the basis of the Plaintiff's Complaint, even if the Plaintiff has failed to attach such documents to the Complaint. *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 983 (8th Cir. 2008)(" the district court is limited to the materials properly before it on a motion to dismiss, which may include public records and materials embraced by the complaint"); *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)(at the 12(b)(6) stage, the court may consider both "materials that are part of the public record" and "materials that are necessarily embraced by the complaint"); *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007)("The district court may take judicial notice of public records and may thus consider them on a motion to dismiss"); *Rakes v. Life Investors Ins. Co. of Am.*, 2007 U.S. Dist. LEXIS 52719, *8-9 (N.D. Iowa 2007)("A plaintiff is under no obligation to attach to her complaint documents upon which her action is based, but a defendant may introduce certain pertinent documents if the plaintiff failed to do so.") *See also Sioux Biochemical, Inc. v. Cargill, Inc.,* 410 F. Supp. 2d 785, 790-791 (N.D. Iowa 2005); *Florida State Bd. of Admin. v. Green Tree Fin. Corp.,* 270 F.3d 645, 663 (8th Cir. 2001); *Catholic Order v. U.S. Bancorp Piper Jaffray, Inc.,* 337 F. Supp. 2d 1148, 1159-1160 (N.D. Iowa 2004). In this Circuit, considering such materials does not convert a motion to dismiss into a motion for summary judgment. *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).

*IP LLC v. Miller*, 11-cv-03047-MWB; *Fraserside IP LLC v. Contact Privacy*, 11-cv-03048-MWB; and *Fraserside IP LLC v. WhoIsGuard d/b/a PornerBros.com,* 11-cv-03056-MWB.) None of the defendants in any of these actions are located in Iowa.

### B.     Fraserside Holdings

Fraserside Holdings, in turn, is a wholly owned subsidiary of Private Media Group, Inc., a publicly traded company incorporated in Nevada. Although the Complaint pretends that Fraserside IP is the same as Fraserside Holdings and Private Media, in truth, each of these companies is a separate legal entity.[3]

Fraserside Holdings, is a Cyprus-based company which has consistently asserted in other judicial proceedings that it is not subject to jurisdiction anywhere in the United States. *See, e.g, Russell Whitaker, d/b/a C&B Videos, et al. v. MGA, Inc., et al.*, Middle District of Georgia, Civil Action No. 1:05-CV-00099-WLS, Motion to Dismiss the Complaint, Document 51, pp. 2-3 ("Plaintiff has not set forth any sufficient basis to support the proper exercise of personal jurisdiction over [Fraserside Holdings, Ltd. ("FHL")] FHL, a foreign corporation that is incorporated under the laws of, and has its principal place of business in, the country of Cyprus. …FHL does not own or lease any real estate in Georgia or the United States. …FHL does not have any employees in Georgia or the United States. …FHL does not ship any goods for sale to Georgia. The goods are distributed in the United States by distributors with whom FHL has contractual relationships"); *Holland v. MGA, Inc., et al.*,[4] Middle District of Alabama, Civil Action No. 1:05 CV 00237-M, Fraserside's Motion to Dismiss the Complaint, Docket No. 80, p.

---

[3] The Court might reasonably wonder why Private Media Group would work so hard at setting up multiple corporate entities, only to ask this Court to ignore those corporate formalities when it comes to identifying the true owner of the intellectual property at issue.

[4] In *Holland v. MGA, Inc., et al.*, Middle District of Alabama, Civil Action No. 1:05 CV 00237-M, Private Media Group's Chief Financial Officer, Johan Gillborg, filed an affidavit in an attempt to resist jurisdiction over Fraserside Holdings. *See* Document 79. In that affidavit, Mr. Gillborg noted that Fraserside Holdings was a Cyprus corporation, which did not own or lease any real estate in Alabama or the United States, and did not have any

6 ("Fraserside does not sell any goods in Alabama, and in fact, does not sell any goods in the United States. Its products are sold and distributed by third party distributors with independent contractual relationships. Fraserside has no knowledge of what is done with its products within the United States.") *See also Clark v. MGA, Inc., et al.,* Southern District of Alabama, Civil Action No. 2:05 CV 00633-SLB, Docket No. 33, p. 6 (same); *Carter v. MGA, Inc., et al.*, Northern District of Alabama, Civil Action No. 2:05 CV 01662-WMA, Docket No. 47, p. 9 (same).

### C. Private Media Group and its Receiver

Private Media Group, Inc. is a publicly-traded company, incorporated in the state of Nevada. Private's main corporate headquarters are located in Barcelona, Spain.

On August 13, 2010, in an action pending in the Clark County District Court of Nevada, entitled *Consipio Holding, BV v. Private Media Group, Inc.*, Case No. A-10-622802-B, the Court issued a temporary restraining order against Private, enjoining Private and its subsidiaries and affiliates from (among other things), "...disposing of any business assets (outside of the ordinary course of business" or "...undertaking any other act or transaction that is not in the ordinary course of business, without the prior approval of a majority of the disinterested members of the Board of Directors...." *See*, Exhibit 1. On November 17, 2010, this Temporary Restraining Order was continued by the Court as a Preliminary Injunction. *See*, Exhibit 2.

On August 25, 2011, after finding that Private's directors were both ignoring the orders of the court and attempting to dissipate its assets, that same Court appointed a receiver, Mr. Eric

---

employees in Alabama or the United States. *Id.* In addition, Mr. Gillborg stated under oath that "Fraserside does not ship any goods for sale to Alabama. The goods are distributed in the United States by distributors with whom Fraserside has contractual relationships." *Id.*

4

Johnson, to take over the management of Private and all of its subsidiaries and affiliates. *See*, Exhibit 3. In its order, the Court first made the following findings of fact (among others):

> 24. Throughout the course of this lawsuit, PRVT has demonstrated a propensity for disregarding or resisting clear and unambiguous orders of the Court.
>
> 31. PRVT's directors... have been guilty of gross mismanagement in the conduct or control of PRVT's affairs.
>
> 32. PRVT's directors... have been guilty of misfeasance, malfeasance or nonfeasance.
>
> 34. PRVT's assets are in danger of waste, sacrifice or loss.
>
> 35. The appointment of a receiver over PRVT is necessary to preserve its remaining assets and business and to protect its shareholders.

The Court then ordered that Mr. Johnson "shall immediately take control of all assets of PRVT including, without limitation, all direct and indirect subsidiaries of PRVT (including those entities named below) and their respective assets." *Id.* The listed entities included Fraserside IP, LLC, Fraserside Holdings, Ltd., Milcap Media Group, S.L.U., and Cine Craft, Ltd. *Id.*

Despite the appointment of Mr. Johnson as receiver, Private, its directors, its subsidiaries, and affiliates have apparently acted to obstruct the receiver by blocking him from access to corporate offices and attempting to transfer Private's assets out of the company. *See, e.g.,* Exhibits 4, 5, and 6. And, when contacted by counsel for the Defendants in the present case, counsel for the receiver, Attorney Thomas Kummer, stated that the receiver was unaware of: (1) the existence of the present case (or the ten other cases brought by Fraserside IP, currently pending in this court), (2) who was purporting to represent Fraserside IP (and pursuant to whose authority), and (3) the purported transfer of intellectual property to Fraserside IP. *See* Affidavit of Evan Fray-Witzer, attached as Exhibit 7.

5

### D. Roland Waterweg

Mr. Waterweg is an individual who resides in the Philippines.[5] *See* Waterweg Affidavit, attached as Exhibit 8. Neither Mr. Waterweg, nor his websites, have an office in Iowa, a telephone number in Iowa, employees in Iowa, or an agent for service of process in Iowa. Mr. Waterweg maintains no servers in Iowa for his websites. *Id.*[6] Mr. Waterweg does not advertise in Iowa and, indeed, Mr. Waterweg has never even visited Iowa. *Id.*

With respect to the websites maintained by Mr. Waterweg (and contrary to the boilerplate allegations contained in the Plaintiff's complaint[7]), neither Eskimotube.com nor Tjoob.com enter into financial transactions with users in Iowa or anywhere else for that matter. *Id.* Indeed, with respect to Eskimotube.com, the website does not provide for membership of any kind, paid or unpaid. *Id.* And, although Tjoob.com does allow users to register as members, it does not charge for membership, nor does it otherwise enter into any type of contract or financial arrangement with its users. *Id.* Instead, to the extent that either website generates revenues, it does so through advertising and referral agreements with other websites. *Id.* For example, users looking to access non user-generated full-length movies can click on a link and be forwarded to a separate website operated by Pornstar Network, a company that legitimately licenses content and provides it to end users pursuant to its licensing agreements. *Id.* In May of 2010 (when the alleged infringement at issue in this case took place), users could also click on a link which would take them to a site operated by Meta Interfaces, a company which licensed content from

---

[5] To the extent that EskimoTube.com and Tjoob.com have a "location," then, it is in the Philippines, where Mr. Waterweg is located and where he maintains the sites.

[6] Consideration of affidavits is appropriate in the context of a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). *See Armstrong v. Am. Pallet Leasing Inc.,* 2009 U.S. Dist. LEXIS 77138 (N.D. Iowa 2009); *Med-Tec, Inc. v. Kostich*, 980 F. Supp. 1315, 1319 (N.D. Iowa 1997).

[7] As this Court is well aware, Fraserside IP has initiated sixteen separate, yet nearly identical actions in this Court, naming in each an out of state defendant (or defendants). In the present case, in addition to the deficiency of personal jurisdiction from which all of the other litigations suffer, the complaint suffers from a paucity of accurate facts. In utilizing its boilerplate complaint, Fraserside IP appears to have failed to check the accuracy of its allegations as they apply to this particular defendant.

6

Private Media Group.[8]  *Id.* Finally, certain content is generated by the users of the websites themselves.  *Id.*

### The Intellectual Property

Although the Complaint alleges that the "Plaintiffs" own and have registered certain copyrights and trademarks, there are no "Plaintiffs," plural, but rather a singular Plaintiff, Fraserside IP.[9]  At the time the present litigation was filed, neither the United States Copyright Office nor the United States Patent and Trademark Office listed Fraserside IP as having registered a single copyright or trademark.  At the time, each of the copyrighted works alleged to be registered by Fraserside IP was actually registered by either Fraserside Holdings or Milcap Media, Ltd, both of which are based in Cyprus.  And, at the time the present litigation was filed, each of the trademarks alleged to be owned or registered by Fraserside IP is actually owned and registered by Cine Craft Ltd., a Private Media Group subsidiary located in the United Kingdom.

In other cases pending in this Court, however, Fraserside IP has produced documents which purport to transfer Fraserside Holdings' intellectual property to Fraserside IP.  *See* Exhibits 10, 11, 12, and 13.  These purported assignments, however, made without any readily apparent consideration: (1) are directly contradicted by Fraserside Holdings' *subsequent* sworn submissions in the Central District of California, in which Fraserside Holdings continues to assert ownership over the copyrights and trademarks supposedly transferred, and (2) would

---

[8] In August of 2010, Fraserside Holdings initiated an action against Meta Interfaces, claiming copyright violations, despite the fact that Meta Interfaces was providing Fraserside Holdings' content pursuant to a written contract. After nine months of litigation, Fraserside Holdings dismissed its suit in its entirety and issued a joint press release with Meta Interfaces in which it admitted that it was dismissing the suit because "it has been made obvious that Fraserside has no claims against Meta." *See* Exhibit 9.  Presumably, Fraserside Holdings should have been able to determine that it had no claims against its licensee before filing and pursuing costly litigation.

[9] It is understandable why Fraserside IP would like to conflate its actions with those of Fraserside Holdings, Private Media Group, Milcap Media, and Cine Craft – it is those other (non-Iowa) companies that actually created, registered, and utilize the intellectual property at issue.  Fraserside IP, on the other hand, exists only to manufacture personal jurisdiction in Iowa.

7

appear to violate the Nevada court's injunction preventing the transfer of any of Private's assets outside the ordinary course of business.

### Argument

I. The Complaint Must Be Dismissed Because Mr. Waterweg is Not Subject To Personal Jurisdiction in Iowa.

In its complaint, Fraserside IP cites – as the basis for personal jurisdiction over Mr. Waterweg - 28 U.S.C. §§ 1391.[10] *See* Complaint, ¶4. Section 1391, of course, has nothing to do with personal jurisdiction, or jurisdiction at all, but rather is the federal venue statute. Fraserside IP's pleading deficiencies, however, go much further than a mere inability to cite to the correct authority: Fraserside IP has failed to articulate any facts or legal basis for the exercise of personal jurisdiction over Mr. Waterweg.

Presumably, Fraserside IP intends to argue that jurisdiction over Mr. Waterweg can be premised on Iowa's long arm statute. *See* Iowa Code § 617.3 and Iowa Rule of Civil Procedure 56.2. The Court "may assume jurisdiction over a foreign defendant only to the extent permitted by the forum state's long-arm statute and by the Due Process Clause of the Constitution." *Dakota Indus., Inc. v. Ever Best Ltd.*, 28 F.3d 910, 915 (8th Cir. 1994). Because Iowa's long arm statute extends jurisdiction to the limits of due process allowed by the United States Constitution, the inquiry collapses into the single question of whether exercise of personal jurisdiction comports with due process." *Bell Paper Box, Inc. v. U.S. Kids, Inc. (Bell Paper I)*, 22 F.3d 816, 818 (8th Cir. 1994).

The Due Process Clause requires "minimum contacts" between the nonresident defendant and the forum state before the court may exercise jurisdiction over the defendant. *Coen v. Coen*, 509 F.3d 900, 905 (8th Cir. 2007) *citing World-Wide Volkswagen Corp. v. Woodson*, 444 U.S.

---

[10] After 15 near-identical complaints filed with this Court, one would have thought that Fraserside IP would at least expend the effort to correct obvious deficiencies in its pleadings.

286, 291 (1980). This Circuit employs a five-part test for measuring minimum contacts: (1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. Factors one through three are primary. *Id.* "With respect to the third factor, we distinguish between specific jurisdiction and general jurisdiction. 'Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state,' while '[g]eneral jurisdiction . . . refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose.'"[11] *Coen, supra* (citations omitted).

Given the complete absence of facts alleged upon which personal jurisdiction might be premised over Mr. Waterweg, Mr. Waterweg is left to guess as to the basis for jurisdiction over it. Presumably, Fraserside IP is arguing that the existence of two websites operated by Mr. Waterweg – accessible anywhere in the free world – is a sufficient basis upon which jurisdiction may be based. Assuming that this is indeed Fraserside IP's argument, it must fail.

In analyzing whether specific jurisdiction can be based on the defendant having operated a website, the Eighth Circuit starts with the analytical framework laid out in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). In *Zippo*, the Court outlined a sliding scale whereby the Court would determine if a website was passive, interactive, or one which involved entering into contracts and the repeated and knowing transmission of computer files into the foreign jurisdiction. *Id. See also Lakin v. Prudential Securities, Co.*, 348 F.3d 704, 710-12 (8th Cir. 2003); *Principal Financial Services, Inc. v. Big*

---

[11] Given that Mr. Waterweg has no offices or employees in Iowa, owns no property in Iowa, has no telephone number, pays no taxes, maintains no servers, and has no agent for service of process in Iowa, there can be no argument that it has the requisite "continuous and systematic" contacts with Iowa necessary to assert general jurisdiction. *See*, *e.g.*, *Johnson v. American Leather Specialties, Corp.*, 565 F. Supp. 2d 1015 (N.D. Iowa 2008).

*Finance and Insurance Services, Inc.*, 451 F. Supp. 2d 1046, 1056 (2006); *Lindgregn v. GDT, LLC*, 312 F. Supp. 2d 1125, 1130 (S.D. Iowa 2004).

Crucially, under the *Zippo* test "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of *commercial* activity that [the defendant] conducts over the Internet." *Id.* at 1124 (emphasis added).

In the Eighth Circuit, however, the Zippo test is but a starting point and the Court must also consider, "at a minimum… the nature and quality of the contacts and… their relation to the cause of action." *Lindgregn,* 312 F. Supp. 2d at 1130. Regardless of whether the website is interactive or not, the *Lindgregn* Court emphasized "that personal jurisdiction requires 'purposeful conduct directed at the state.'" *Id.* at 1131, *quoting ALS Scan, Inc. v. Digital Serv. Consult. Inc.,* 293 F.3d 707, 712-713 (4th Cir. 2002). *See also Dryspace, Inc. v. Crawlspace Concepts, LLC,* 2011 U.S. Dist. 31007 (N.D. Iowa 2011).

In rejecting the Plaintiff's argument that jurisdiction could be based solely on the defendant's website, the *Lindgregn* Court stated that "while GDT's Web site is both commercial and interactive, the site is arguably no more directed at Iowa than at Uzbekistan." *Lindgregn,* 312 F. Supp. 2d at 1132. "The fact that someone who accesses defendants' Web site can purchase a Jean Jewel, does not render defendants' actions purposefully directed at this forum. …There is no evidence that GDT took any purposeful action towards Iowa – it did not direct any paid advertising to Iowa or solicit Iowa residents to visit its Web site. It merely processed the orders from Iowa customers who visited its site. Merely entering into a contract with a forum resident does not provide the requisite contacts between a nonresident defendant and the forum state." *Id.* (internal citations and quotation marks omitted).

10

Similarly, in *Viasystems, Inc. v. EBM-PAPST St. Georgen GmbH & Co.*, 2010 U.S. Dist. LEXIS 57871 (E.D. Miss. 2010), the court applied *Zippo*, as interpreted by the Eighth Circuit and concluded that the defendants' maintenance of its website – which was accessible by residents of Mississippi – could not support a finding of personal jurisdiction over the nonresident defendant no matter how many Missouri residents visited the website because the website did not allow visitors to make direct purchases, but rather redirected them to another website. *Id.* at *18 ("The Court therefore concludes that EBM is not carrying out 'systematic or continuous' business in Missouri through its website because the website (1) does not allow Missouri customers to enter into transactions with EBM, (2) does not contain any information targeted specifically at potential Missouri customers, as differentiated from potential U.S. customers generally, and (3) directs those potential Missouri customers who do wish to purchase EBM products to EBM's United States affiliate, which in turn directs them to local distributors.") *See, also, P.S. Prods. v. Alibaba.com Inc.*, 2011 U.S. Dist. LEXIS 25948 (E.D. Ark. Mar. 10, 2011)(rejecting personal jurisdiction based on the defendant's website because the website did not directly enter into commercial transactions, but rather was simply a "portal that receives a fee for any purchase transacted as a result of the listing on the Website"); *David White Instruments, LLC. v. TLZ, Inc.*, 2003 U.S. Dist. LEXIS 8375 (N.D. Ill. May 14, 2003))rejecting personal jurisdiction where "*visitors of robotoolz.com cannot purchase the allegedly infringing products from Toolz's website. Rather, consumers who wish to purchase an allegedly infringing product must visit an unaffiliated website, internationaltool.com.")*

In the present case, Fraserside IP's complaint fails in its entirety. Looking first to Mr. Waterweg, individually, the Complaint contains not a single allegation which would support

11

jurisdiction over Mr. Waterweg, a resident of the Philippines, who has no connection whatsoever to Iowa.

Nor can the mere fact that Mr. Waterweg operates websites at EskimoTube.com and Tjoob.com support personal jurisdiction. Although each of the websites may have a certain level of interactivity (inasmuch as users can view or post videos), **_neither site enters into any kind of commercial transaction with any of its users – in Iowa or anywhere else_**. Nor does the Complaint contain an allegation that *any* resident of Iowa has either viewed or downloaded Fraserside IP's intellectual property (assuming that it has any) at these sites. Indeed, the Complaint does not even allege how many – if any – Iowa residents have visited Mr. Waterweg's websites. And, perhaps most importantly, the Complaint contains no allegation that Mr. Waterweg has somehow directed his websites at the citizens of Iowa. Such glaring omissions are fatal to an assertion of jurisdiction over Mr. Waterweg.

Nor can personal jurisdiction be premised on the allegation that infringement of Fraserside IP's intellectual property (assuming that it has any) would cause injury in Iowa. *Amerus Group Co. v. Ameris Bancorp.*, 2006 U.S. Dist. 32722 (S.D. Iowa 2006)(in answering "the question of whether, standing alone, the 'effects' of a tortious act can subject a defendant to personal jurisdiction in a forum where no other contacts exist. This Court holds it cannot. …*Calder*[12] did not carve out a special intentional torts exception to the traditional specific jurisdiction analysis, so that a plaintiff could always sue in his or her home state.") *See also Dryspace, Inc. v. Crawlspace Concepts, LLC,* 2011 U.S. Dist. 31007 (N.D. Iowa 2011) ("Although the Court accepts as true Plaintiff's allegations that Defendant intentionally infringed Plaintiff's registered trademark, this allegation alone fails to show how Defendant uniquely or expressly aimed its tortious acts at Iowa. …Thus, Plaintiff has failed to demonstrate that

---

[12] *Calder v. Jones*, 465 U.S. 783 (1984).

12

Defendant's acts were performed for the very purpose of having their consequences felt in the forum state")(internal quotation marks and citations omitted); *Lindgregn v. GDT, LLC*, 312 F. Supp. 2d 1125, 1130 (S.D. Iowa 2004)(In holding that personal jurisdiction could not be based on the defendants' website, which the plaintiff alleged violated the plaintiff's copyrights, causing harm in Iowa, the Court noted that "the Eight Circuit clearly has refused to abandon the traditional minimum contacts test when relying on *Calder*. …although the defendants' alleged harmful activities may have harmed the plaintiff in Iowa, absent additional contacts, this effect alone was not sufficient to bestow personal jurisdiction in Iowa.")

Nor has Fraserside IP alleged that Mr. Waterweg has taken intentional actions which were "uniquely or expressly aimed at" Iowa, that the brunt of the harm was suffered in Iowa, or that he knew that the brunt of the harm would be suffered in Iowa. Mr. Waterweg's websites are no more "aimed at Iowa" than they are named at New York, Madrid, Hong Kong, or any other place in the world where the internet is available. *Most importantly, it would have been impossible for Mr. Waterweg to have suspected that any harm (much less the brunt of it) would be felt in Iowa, given that – at the time of the alleged infringement – all of the copyrights and trademarks at issue were registered not to Fraserside IP, but rather Fraserside Holdings, Ltd. (a Cyprus Corporation), Milcap Media, Ltd. (a Cyprus Corporation), and Cine Craft, Ltd. (a UK Corporation).*

And, indeed, under Eighth Circuit precedent, even if Fraserside IP could prove that Mr. Waterweg knew that the brunt of the effects would be felt in Iowa (which it clearly cannot), such "effects" would be insufficient without more to establish jurisdiction over Mr. Waterweg. *Zuffa, LLC v. Showtime Networks, Inc.*, 2007 U.S. Dist. LEXIS 60711 (D. Nev. 2007)(knowledge that copyright holder was located within the jurisdiction "by itself fails to establish that Showtime

13

and ProElite individually targeted Plaintiff"); *Amerus Group Co. v. Ameris Bancorp*, 2006 U.S. Dist. LEXIS 32722 (S.D. 2006)(discussing whether, under Eighth Circuit precedent, "standing alone, the 'effects' of a tortious act can subject a defendant to personal jurisdiction in a forum where no other contacts exist. This Court holds it cannot"); *Principal Fin. Servs. v. Big Fin. & Ins. Servs., 451 F. Supp. 2d 1046, 1059-1061 (S.D. Iowa 2006)*("Given the complete absence of any substantial connection between Big Finance and the state of Iowa, the Court cannot exercise jurisdiction solely because the effects of the alleged injury may be most strongly felt in Iowa"); *Express Scripts, Inc. v. Care Continuum Alliance, Inc.*, 2011 U.S. Dist. LEXIS 61157, *12 (D. Miss. 2011)("Even if plaintiffs adduced evidence that Care Continuum knew Express Scripts owned the mark and resided in Missouri, this fact alone this would be insufficient to confer personal jurisdiction under Calder; because there is no evidence that Care Continuum ever targeted this state or had any other contacts with it.")[13]

Because there is no personal jurisdiction over Mr. Waterweg, the present action must be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

> II. The Complaint Must Be Dismissed Because Fraserside IP Does Not Have Standing to Assert or Pursue The Present Claims.

Pursuant to Section 501(b) of the 1976 Copyright Act, 17 U.S.C. § 101, et seq.,

---

[13] The Express Scripts case is particularly on point. There, the two Plaintiffs were a Missouri-based parent company (Express Scripts) and its wholly-owned subsidiary (CuraScript), which owned the trademarks in question. Although CuraScript was not itself headquartered in Missouri, it maintained a place of business in Missouri, had senior corporate officers located in Missouri, and conducted administrative activities in Missouri. Id. at *10. Nevertheless, the Court rejected jurisdiction in Missouri based on Eighth Circuit precedent, holding that – even though CuraScript maintained a presence in Missouri – such evidence was "insufficient for me to conclude that CuraScript will feel the effects of any mark infringement here. Its contacts are simply too limited." The Court went on to hold that "the Eighth Circuit has narrowly construed the Calder effects test, holding that 'mere effects in the forum state are insufficient to confer personal jurisdiction.'" Id. at *10-11, citing Johnson, supra. "Instead, plaintiff must present some evidence that defendants had other contacts with the forum state, and intentionally aimed their tortious activities to that state for the very purpose that their effects would be felt in that state. ...Here, there is no evidence that Care Continuum directly targeted any alleged mark infringement at Missouri, knowing the brunt of the infringement would be felt here." Id. at 12.

14

(the "Act") only the legal or beneficial owner of an exclusive right under copyright law is entitled, or has standing, to sue for infringement. *United States v. Chalupnik*, 514 F.3d 748, 753 (8th Cir. 2008)("copyright law generally limits standing to seek a civil remedy for copyright infringement to the owner of the copyright or to a person who holds an exclusive license to one of the owner's exclusive rights in the copyrighted work"). *See also Benchmark Homes, Inc. v. Legacy Home Builders, LLC*, 2006 U.S. Dist. LEXIS 53879 (D. Neb. 2006)("The right to sue for an accrued claim for infringement is not an exclusive right… Because Benchmark did not own any substantive rights in copyright that would allow it to file a copyright infringement claim under §501(b), Benchmark lacked standing when the action was filed"); *Silvers v. Sony Pictures Entm't Inc.*, 402 F.3d 881, 884 (9th Cir. 2005)("only the owner of an exclusive right under the copyright is entitled to sue for infringement"); *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27 (2d Cir. 1982). *See also ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991) (citing *Eden Toys*, "the Copyright Act does not permit copyright holders to choose third parties to bring suits on their behalf.") *See also Order of Dismissal, Righthaven LLC v. Democratic Underground, LLC*, Civil Action No. 2:10-cv-01356, Docket No. 116 (D. Nev. 2011).

While it is true that the exclusive rights under copyright law may be transferred and owned separately, the assignment of a bare right to sue is ineffectual because it is not one of the exclusive rights. *Silvers,* 402 F.3d 881 at 884-85. Since the right to sue is not one of the exclusive rights, transfer solely of the right to sue does not confer standing on the assignee. *Id*. at 890. One can only obtain a right to sue on a copyright if the party also obtains one of the exclusive rights in the copyright. *See id*.

Fraserside IP's trademark claims similarly fail. Even assuming that Cine Craft, Ltd. has attempted to assign to Fraserside IP the ability to sue for trademark infringement, such an attempted assignment would be without effect. *International Society for Krishna Consciousness of Western Penn., Inc. v. Stadium Authority of the City of Pittsburgh*, 479 F. Supp. 792 , 797 (W.D. Pa. 1979)("There are no rights in a trademark alone, and 'no rights can be transferred apart from the business with which the mark is associated'"); *Multimin USA, Inc. v. Walco International, Inc.,* 2007 U.S. Dist. LEXIS 41801 (N.D. Tex. 2007)(holding that only the registrant or owner of a trademark has standing to sue and rejecting a licensee's right – other than an exclusive licensee - to bring an action); *Quabaug Rubber Company v. Fabiano Shoe Company, Inc.*, 567 F.2d 154, 159 (1st Cir. 1977)("The pertinent portion of the Lanham Act relating to trademark infringement actions provides that an infringer 'shall be liable in a civil action by the *registrant* for the remedies provided hereunder.")(emphasis in original) *See also Agrashell, Inc. v. Hammons Products Co.,* 352 F.2d 443, 446 (8th Cir. 1965)("The fact that the agreement gives Agrashell a right to sue in its own name is without significance. Ownership of the patent[14] is a requisite to the right to sue for infringement").[15]

Directly on-point is *Visa U.S.A., Inc. v. First Data Resources,* 2005 U.S. Dist. LEXIS 37276 (N.D. Cal. 2005), a trademark infringement case brought under the Lanham Act. There, the plaintiff, VISA U.S.A., asserted that it had "standing to sue on VISA International's trademarks because it is a licensee of the VISA Marks, is responsible for monitoring compliance

---

[14] Although *Agrashell* was a patent case, courts have found patent cases and trademark cases sufficiently similar to be instructive with respect to one another. *See, e.g., International Society for Krishna Consciousness, supra.*

[15] Additionally, any purported assignment of Cine Craft Ltd.'s trademarks to Fraserside IP would be invalid, given that no such assignment has been recorded with the USPTO. *International Society for Krishna Consciousness, supra,* at 797 ("Assignment of trademark rights is carefully circumscribed by statute, complete with writing and recording requirements.") *citing* 15 U.S.C. §1060, which provides, in relevant part, that "Assignments shall be by instruments in writing duly executed. Acknowledgement shall be prima facie evidence of the execution of an assignment and when recorded in the Patent Office the record shall be prima facie evidence of execution."

16

with the marks in the United States, and is a close corporate affiliate of Visa International." *Id.* at *9. The Court flatly rejected VISA's argument:

> Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), creates a cause of action for a trademark "registrant" when a defendant uses a registered trademark without consent. Section 32 permits standing to sue for trademark infringement by the registrant of the mark, which, by statute, includes the legal representatives, predecessors, successors, and assigns of the registrant. 15 U.S.C. § 1127. Assignment of trademark rights is carefully circumscribed by statute, complete with writing and recording requirements.
>
> …Here, Visa, U.S.A. maintains that it has standing to sue First Data on the basis that it is a licensee of the VISA Marks, it monitors compliance with the marks in the United States, and is a close corporate affiliate of the registrant, Visa International. (Opp. Br. at 1.) As a matter of law, such status is insufficient to afford Visa, U.S.A. standing to sue under Section 32. Visa, U.S.A. cannot maintain standing as a licensee because it does not operate as an exclusive licensee with sufficient property rights in the mark. Further, its claims of responsibility for monitoring the mark and its status as a close corporate affiliate with the registrant do not confer standing under Section 32.

*Id.* at *9-10.

In the present case, the Complaint contains no specific allegation that *any* intellectual property rights have actually been transferred to Fraserside IP and Fraserside Holdings' sworn representations in other courts strongly suggest that either no such assignment actually occurred or that the assignment was really a sham, with the original owners and registrants continuing to assert ownership over the intellectual property allegedly transferred. Additionally, given that Private and its subsidiaries and affiliates were under a Court injunction at the time the intellectual property was allegedly transferred (without consideration), it is likely that any such transfers were fraudulent and *void ab initio*. Finally, given that the present litigation is apparently being conducted without the knowledge or approval of the court-appointed receiver, it would appear that Fraserside IP is without standing to proceed and the present action must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## Conclusion

For the reasons stated herein, Mr. Waterweg respectfully requests that Fraserside IP's Complaint be dismissed in its entirety.

Respectfully submitted,
Roland Waterweg, www.Eskimotube.com, and www.Tjoob.com,

By their attorneys,

/s/Evan Fray-Witzer
Evan Fray-Witzer, *pro hac vice*
Ciampa Fray-Witzer, LLP
20 Park Plaza, Suite 804
Boston, MA 02116
(617) 723-5630
Evan@CFWLegal.com

/s/Valentin Gurvits
Valentin Gurvits, *pro hac vice*
Boston Law Group, PC
825 Beacon Street, Suite 20
Newton, MA 02459
 (617) 928-1804
vgurvits@bostonlawgroup.com

/s/Jennifer E. Rinden
Connie Alt            AT0000497
Jennifer E. Rinden    AT0006606
        for
SHUTTLEWORTH & INGERSOLL, P.C.
500 US Bank Bldg., P.O. Box 2107
Cedar Rapids, IA 52406
PHONE:       (319) 365-9461
FAX:         (319) 365-8564
jer@shuttleworthlaw.com

ECF CERTIFICATE OF SERVICE

    I, Evan Fray-Witzer, hereby certify that on November 4, 2011, a copy of the above document was served on Chad Bellville, attorney for the plaintiff, through the Court's ECF system in accordance with FRCP 5. In addition, a copy of the above document was served by email on Thomas Kummer, Esq., counsel for Eric Johnson, the plaintiff's court-appointed receiver.

                                        /s/ Evan Fray-Witzer

19

Case 3:11-cv-03043-MWB   Document 13-1   Filed 11/04/11   Page 20 of 20