Chad Belville IA Bar 015731
304 East Beth Drive
Phoenix, AZ 85042
602-904-5485
FAX 602-297-6953
cbelville@azbar.org
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
IN AND FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION


FRASERSIDE IP LLC,                              )
     An Iowa Limited Liability Company     )
                                   )    No. 11-cv-03043-MWB
                                   )
vs.                                             )
                                   )    BRIEF IN SUPPORT OF
Roland Waterweg, dba www.eskimotube.com        )    RESISTANCE TO MOTION TO
and dba www.tjoob.com and www.eskimotube.com )    DISMISS
and www.tjoob.com and John Does 1 – 100 and   )
John Doe Companies 1-100                        )



       COMES NOW, Plaintiff Fraserside IP LLC, by and through its counsel, Chad Belville,

and RESISTS Defendants' Motion to Dismiss in its entirety. In support of it Resistance to

Motion, Plaintiff provides the following Brief and Attachments.

1

# TABLE OF CONTENTS

Table of Contents……………………………………………………………………...…..…….2

Table of Authorities………………………………………………………………………….3

Facts……………………………………………………………………………….…….5

I.      Plaintiff Resists Defendants' Motion to Dismiss for Lack of Personal Jurisdiction……...6

        A.      The Standard for Granting a Motion to Dismiss for Lack of Personal Jurisdiction….6

        B.      The Standard for Finding Personal Jurisdiction Over a Defendant………………6

        C.      Defendants' Internet Activities Establish Specific Personal Jurisdiction…………7

        D.      The Court May Exercise General Personal Jurisdiction Over Defendants……..19

        E.      The Court Should Permit Jurisdictional Discovery by Plaintiff………………..22


II.     Plaintiff's Standing to Assert Copyright and Trademark Infringement…………………24

        A.      Plaintiff is the Proper Assignee of all Rights in and to the Copyrighted and

                Trademarked  Products and the Right to Sue for Accrued Infringement, and Thus

                has Standing to Sue……………………………………………………………24

        B.      The Allegations of Transfers in Violation of Court Orders and Without the

                Knowledge of the Receiver are Untrue and Do Not Support Dismissal……..26


CONCLUSION………………………………………………………………………..28

Case 3:11-cv-03043-MWB   Document 14-1   Filed 11/18/11   Page 2 of 30

**TABLE OF AUTHORITIES**

*Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991
                                                                      6, 16, 17, 18

*Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741 (8th Cir. 2011)……………………………..6

*Hicklin Eng'g, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir.1992) (per curiam)…………......6

*Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir.2008)……………………………………………7

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 (1984)…………......7

*Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985)……………………………………………7

*Brown v. Kerkhoff*, 504 F. Supp. 2d 464, 504 (S.D. Iowa 2007)…………………………………7

*Lakin v. Prudential Sec., Inc.*, 348 F.3d 704 (8th Cir.2003)……………..8, 18, 19, 20, 21, 22, 23

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997)…..8, 9, 10, 19

*Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir.2002)…………..9, 10, 18

*Bird v. Parsons*, 289 F.3d 865, 874-875 (6th Cir. 2002)…………………………………10, 18

*CYBERsitter, LLC v. People's Republic of China*, 2011 WL 3322552 (C.D. Cal. 2011)

                                                              10, 12, 13, 14, 15, 17, 18

*Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)……………13, 14, 15, 17

*Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284 (9th

Cir.1997)……………………………………………………………………..………14

*Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010)………… 15

*AmerUs Group Co. v. Ameris Bancorp*, 2006 WL 1452808 (S.D. Iowa 2006)……………….....16

*Dryspace, Inc. v. Crawlspace Concepts, L.L.C.*, 2011 WL 1113585 (N.D. Iowa 2011)………..16

*Brainerd v. Governors of Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir.1989) ……..………18

*Haisten v. Grass Valley Medical Reimbursement*, 784 F.2d 1392, 1397 (9th Cir.1986)……….18

3

*Lindgren v. GDT, LLC*, 312 F.Supp.2d 1125 (S.D. Iowa 2004)……………………………..19, 20

*Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 780-781, 104 S.Ct. 1473, 1481-1482 (1984)..22

*Abkco Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir.1991)………..………25

*Two Pepper Music v. Rhino Records, Inc.*, 173 F.3d 846 (2d Cir. 1999)…………………..………25

*Getty Images (US) Inc. v. Advernet, Inc.*, --- F.Supp.2d ----, 2011 WL 2732202 (S.D.N.Y. 2011)………25

*Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881 (9th Cir. 2005)…………….…………25

*International Society for Krishna Consciousness of Western Penn., Inc. v. Stadium Authority of the City of Pittsburgh*, 479 F. Supp. 792 , 797 (W.D. Pa. 1979)…………………….………..…26

*Specht v. Google, Inc.,* 660 F.Supp.2d 858 (N.D. Ill. 2009)……………………………….…………26

*Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)………………..26

*Hodak v. City of St. Peters*, 535 F.3d 899, 904 (8th Cir. 2008)……………...…………………26

Other Authorities

Richard E. Kaye, J.D., Annotation, *Internet Web site activities of nonresident person or corporation as conferring personal jurisdiction under long–arm statutes and due process clause*, 81 A.L.R. 5th 41 (2000)……………………………………………………………………………..8

**Facts**

Plaintiff Fraserside IP LLC is the rightful owner of copyrights and trademarks in high quality brand driven adult motion picture films. Plaintiff, as successor in interest to sister and parent organizations, is engaged in the business of producing, distributing, and/or licensing to others the rights to copy, distribute, transmit and exhibit those copyrighted films and/or other audio visual works. Plaintiff and/or its parent and sister companies expend significant amounts of time, money and other resources to produce high quality products, develop supply chains and distribution systems, and build premium brand recognition of their products. Complaint, ¶ 5, p. 5. Plaintiff is also the holder of certain Trademarks, including a depiction of two female silhouettes, the Private and Private Gold Labels and the Private Life of that have been actively promoted and marketed. As a result, the purchasing public has come to know, rely upon and recognize these marks as an international brand of high quality entertainment. Complaint, ¶ 5-15. Plaintiff, either directly or through affiliates or licensees, distributes its copyrighted works in various forms, without limitation, over the Internet, pay-per-view, video on demand, DVD's, and other formats, by selling them directly or indirectly to the home viewing market or licensing others to do so and through Internet streaming and download services. Complaint, ¶ 5, p. 5.

Defendant Waterweg is the owner and operator of the Defendant websites tjoob.com and eskimotube.com. Defendants' websites offer adult entertainment to users all over the world. United States residents provide the greatest traffic to these websites, with 40.9% of visitors to Tjoob.com being U.S. residents and 33.7% of visitors to Eskimotube.com being U.S. residents. Exhibit A, Alexa audience statistics.

Defendants' websites are offering, displaying and distributing Plaintiff's films to its Internet Users. Defendants know, or have reason to know, that there is no proper license or

5

authority to display and distribute Plaintiff's films on Defendants' websites and no proper license or authority to obtain commercial financial gain from such display and distribution. Complaint, ¶ 35. Nevertheless, Defendants are distributing, showing and receiving Plaintiff's films without proper license, and infringing on Plaintiff's copyright.

## I. Plaintiff Resists Defendants' Motion to Dismiss for Lack of Personal Jurisdiction

### A. The Standard for Granting a Motion to Dismiss for Lack of Personal Jurisdiction

Plaintiff bears the ultimate burden of proof on the issue of personal jurisdiction over the Defendants. However, "jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing." *Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991). To defeat a motion to dismiss for lack of personal jurisdiction, Plaintiff here need only make a prima facie showing of jurisdiction. *Id.* "If the district court does not hold a hearing and instead relies on pleadings and affidavits, as it did here, the court must look at the facts in the light most favorable to the nonmoving party,… and resolve all factual conflicts in favor of that party." *Id.*; *See also, Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741 (8th Cir. 2011).

### B. The Standard for Finding Personal Jurisdiction Over a Defendant

As Defendants note, Iowa's long-arm statute extends personal jurisdiction over nonresidents to the fullest extent permissible under the Due Process Clause. See Iowa R. Civ. P. 1.306. *Hicklin Eng'g, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir.1992) (per curiam). Therefore, this Court only needs to examine whether the exercise of personal jurisdiction over Defendants comports with due process. *Hicklin*, 959 F.2d at 739.

6

"The Supreme Court has recognized two theories for evaluating personal jurisdiction: general and specific jurisdiction." *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir.2008) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 (1984)). General jurisdiction arises when a defendant has carried on in the forum state a continuous and systematic, even if limited, part of its general business, and if so, the injury sued upon need not have any connection with the forum state." *Steinbuch*, 518 F.3d at 586.

"Specific jurisdiction on the other hand is appropriate only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities." *Id.*; *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985).

Defendants in their Motion to Dismiss fail to distinguish between these different forms of jurisdiction and the different standards and proof required for each. Plaintiff sets forth the requirements for the finding of jurisdiction and asks that this Court exercise jurisdiction over Defendants.

### C. Defendants' Internet Activities Establish Specific Personal Jurisdiction

"The continuous and illimitable presence of the internet has required fashioning special rules for applying the traditional due process test." *Brown v. Kerkhoff*, 504 F. Supp. 2d 464, 504 (S.D. Iowa 2007). The "traditional territorial notions of personal jurisdiction, …have required re–examination in recent years in light of technological advances and the increasing globalization of the economy. Commercial uses of the Internet, in particular, have tested the limits of a territorial–based concept of jurisdiction." Richard E. Kaye, J.D., Annotation, *Internet Web site activities of nonresident person or corporation as conferring personal jurisdiction under long–arm statutes and due process clause*, 81 A.L.R. 5th 41 (2000).

Case 3:11-cv-03043-MWB   Document 14-1   Filed 11/18/11   Page 7 of 30

The Eighth Circuit Court of Appeals addressed the issue of whether a website may provide sufficient contacts to invoke jurisdiction in *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704 (8th Cir.2003). As the court noted there, a prima facie case of specific jurisdiction is established by showing that the Defendant has purposely directed its activities at Iowa residents, and that the claims in the suit either arise out of or relate to the defendant's activities. *Lakin*, 348 F.3d at 707. Discussing the unique aspects of basing jurisdiction on Internet activities, the court turned, as many other courts have, to *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997). Taking its cue from *Zippo*, the Eighth Circuit noted that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of the commercial activity that an entity conducts over the Internet." *Id*. at 701, quoting *Zippo*. The *Zippo* court devised a "sliding scale" approach to determine the nature and quality of the Internet activity, stating:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet [website] which is accessible to users in foreign jurisdictions. A passive [website] that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction. The middle ground is occupied by interactive [websites] where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the [website].
> *Zippo*, 952 F.Supp. at 1124.

In *Lakin,* the Eighth Circuit analyzed the sliding scale method outlined in Zippo and concluded that it was proper for use in cases where specific personal jurisdiction was alleged.[1]

*See Lakin*, 348 F.3d at 711. Because the fact situation in *Lakin* concerned only general

---

[1] Defendants ignore this holding of *Lakin*.

jurisdiction, the Eighth Circuit provided no further guidance for the application of the *Zippo* sliding scale. However, as *Zippo* taught, at the top of the scale is the situation where "the defendant enters into contracts with residents of a foreign jurisdiction that involve knowing and repeated transmission of computer files over the Internet," in which case, personal jurisdiction is proper. *Zippo*, 952 F.Supp. at 1124. Under this analysis, the operation of an Internet website can constitute the purposeful availment of the privilege of acting in a forum state "if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir.2002).

The Sixth Circuit Court of Appeals provided an example of what type of website had the interactivity necessary for the exercise of specific jurisdiction. *Neogen Corp. v. Neo Gen Screening, Inc.*, *supra.* As in this case, *Neogen* involved trademark infringement. The defendant company provided blood testing for newborns. The defendant accepted blood for testing and accepted payment from residents in Michigan. It packaged the results of the tests and made the results available over the Internet, providing passwords to Michigan residents. The court found that establishment of a paid area accessible only to members is characteristic of a website with a high degree of interactivity. *See Neogen*, 282 F.3d at 890-91. The Court held that Neogen had presented a prima facie case that NGS transacted business in Michigan by showing the interactive nature of the website. "When Michigan residents purchase NGS's services, for example, NGS provides them with passwords to access their test results on the website from Michigan. The granting of passwords to Michigan residents as part of a contract for NGS's services is an interactive usage showing that NGS has intentionally reached out to Michigan customers and enabled them to use NGS's services from Michigan." Thus, the court found it appropriate to exercise specific jurisdiction over the defendant, NGS.

9

Likewise, in *Bird v. Parsons*, 289 F.3d 865, 874-875 (6th Cir. 2002), the Sixth Circuit court held that the defendants, by maintaining a website on which Ohio residents could register domain names and by allegedly accepting the business of Ohio residents, satisfied the purposeful-availment requirement and were subject to specific jurisdiction. There, the fact that the defendant regularly chose to do business with Ohio residents was sufficient. *Id*.

Here, Defendants' websites are not mere passive websites such as those at the bottom of the Zippo sliding scale. These websites do much "more than make information available to those who are interested in it." *Zippo Mfg*., 952 F.Supp. at 1124. These websites are "interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir.2002).

As the complaint alleges, Defendants' websites "allow third parties to display Plaintiff's intellectual property to third parties on third party websites for the purpose of driving traffic back to Defendant websites." Complaint ¶ 26. The complaint further avers that: "Defendant through the websites EskimoTube and Tjoob, have taken advantage of the existence of legitimate Web sites that properly facilitate the exchange of user-generated content. Defendant websites are truly a subscription membership web site hiding behind the veneer of a simple user-generated content exchange site. Defendant EskimoTube , though co-defendant website Tjoob and Tjoob directly, sells premium memberships to its websites and pays third parties to send traffic to its websites like a membership website." Complaint ¶ 33.

The complaint also alleges that Defendants' websites do not initially allow users to view high quality versions of Plaintiff's films or download Plaintiff's film to the user's computer, although a significant portion is displayed and distributed. If the Internet user wishes to view the film in High Definition, or download the video, the user is presented this the option by becoming

10

a Premium Member, which permits the website user to view Plaintiff's works in HD, download the unauthorized and uncompensated copyrighted work belonging to Plaintiff, receive 24/7 customer support, and interact with other paid subscribers. Complaint ¶ 38.

While Defendants deny that the websites offer membership, the complaint must be taken as true in this motion to dismiss. Thus, the allegations that memberships are offered and paid for, whether directly through Defendants' websites or through referrals to other websites, must be accepted by the Court as the truth for this motion. Further, Defendants admit that the websites permit their users to generate content for the website, making it more interactive. Motion to Dismiss, Exhibit 8. Eskimo Tube's terms of use affirms that "[t]he EskimoTube website allows for uploading, sharing and general viewing various types of content." Exhibit B, Eskimotube Terms of Use.

In addition, while Defendants deny that the websites enter into financial transactions with users, they do not deny entering into financial transactions with U.S. residents for other purposes. Defendants admit, for instance, that the websites generate revenues through advertising and referral income. Motion to Dismiss page 6, and Exhibit 8, Waterweg Affidavit. This agrees with Plaintiff's complaint, alleging that "Advertisers purchase ad space on certain pages and in certain locations on Defendant websites due to the known or estimated Internet traffic that views the particular page or location." Complaint ¶ 36. Defendants do not deny that the advertising and referral agreements may be with United States residents. Certainly, if 37% to 40% of the traffic to these websites is from U.S. residents, some (large) portion of the advertising will be from U.S. advertisers. Further, the websites are hosted by CaroNet at 900 Center Park Drive, Suite A, Charlotte North Carolina. Advertisers that appear on the website include Naughty America, aka LaTouraine Inc., 625 Broadway, Suite 700, San Diego, California; Reality Kings (RK Media),

11

225 7th Stree, Suite LB-100, Miami, Florida; Kelly Madison Productions, 7260 Procyon Street, Las Vegas, Nevada; Highlander Management Systems Inc., 601 Heritage Drive, Juniper, Florida; and Cyber Management Systems, 927 E. New Haven, Suite 205, Melbourne, Florida.

Defendants also state that their websites provide users access to non-user-generated full-length movies by clicking links on its websites to download videos with premium memberships on other websites, for which Defendants receives referral fees. Thus, Defendants are receiving funds paid by U.S. residents on a continuing basis.

The Complaint also makes allegations that connect Defendants to Iowa. In Paragraph 5, at pages 4-5, Plaintiff alleges that Plaintiff sold to Iowa residents over 400 of its videos by mail and 2000 by online downloads. Defendants' infringement affects Plaintiff's sales in Iowa by taking sales away from Plaintiff. Further, Plaintiff alleges that Defendants' websites do have numerous Iowa-based views per month, and that the amount will be determined during discovery. Complaint ¶ 23.

The U.S. District Court for the Central District of California recently decided a case very similar to this one using the tests for specific jurisdiction developed by the Ninth Circuit Court of Appeals. In *CYBERsitter, LLC v. People's Republic of China*, 2011 WL 3322552 (C.D. Cal. 2011), Plaintiff was the developer of Internet parental control software. It alleged that Chinese companies had targeted Plaintiff by obtaining its code for the software and using it to develop their own software programs, and/or reproducing, adapting, and/or distributing Plaintiff's copyrighted work without authorization. As to jurisdiction, Plaintiff alleged that the companies knew that Plaintiff was a U.S. company and that the defendants' acts would cause injury in the U.S. and in California, the forum state. Plaintiff also claimed that the defendants made the infringing software program available for download to individuals in the United States and had

made Plaintiff's code for the software publicly available on its servers. The Plaintiff alleged that a third defendant, who engaged in other activity in California, distributed computers with Plaintiff's software code in China.

The California Court used the Ninth Circuit's three-part test to determine whether a district court can exercise specific personal jurisdiction over a nonresident defendant. First, the defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum. Second, the claim must be one which arises out of or relates to the defendant's forum-related activities. Third, the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable. *CYBERsitter*, 2011 WL 3322552, 6.

The first test, whether there has been purposeful availment of the privilege of doing business in the forum, is the threshold test, of course. The Ninth Circuit evaluates this issue using a form of the "Calder-effects" test, taken from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). Id. The test requires that defendant allegedly must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id*.

The California district court found that the intentional act requirement was easily met as to all defendants. "Courts "construe 'intent' in the context of the 'intentional act' test as referring to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *CYBERsitter*, at 6. Any one of the alleged acts of theft, misappropriation, and subsequent distribution of Plaintiff's code were all actual, physical acts, even if done by computer.

13

Here, too, Plaintiff's allegations and Defendants' admissions show that Defendants have knowingly allowed its users to upload content to the Defendants' websites. Such content is stored on the host computer and made available to other users. It is also clear that Defendants target U.S. users. The websites are all in English. The Eskimotube Terms of Use indicates compliance with United States Copyright laws. The websites users are predominantly U.S. residents – 37% and 40% compared to the next largest user country, for Eskimotube, Germany at 7.2%, and for Tjoob.com, Japan at 5.9%. Exhibit A. Further, Plaintiff has alleged that discovery will show numerous Iowan's are customers of Defendants' sites. Complaint, ¶ 23.

Next, the *CYBERsitter* court looked at whether the activities of the defendants were expressly aimed at the forum state. The requirement of express aiming requires more than "'untargeted negligence' that merely happens to cause Plaintiff harm." *CYBERsitter* at 8. The court cited the Ninth Circuit's previous decision in *Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284 (9th Cir.1997), rev'd on other grounds, 523 U.S. 340, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998), and noted that "an allegation of a defendant's willful copyright infringement against a plaintiff with knowledge of plaintiff's principal place of business satisfies the Calder effects test." *Id.* citing *Columbia Pictures* at 289.

In *CYBERsitter*, the defendants argued, as Defendants do here, that no express aiming occurred because, even if Plaintiff's allegations were true, the defendants did nothing above and beyond willfully infringing Plaintiff's copyright with the knowledge that Plaintiff resided in California, and never distributed or marketed the allegedly infringing products in California. The court disagreed, pointing to the Ninth Circuit's decision in *Columbia Pictures* that an allegation of willful copyright infringement knowingly directed at a forum resident "alone" is sufficient to satisfy purposeful availment. *Id* at 10, citing *Columbia Pictures*, 106 F.3d at 289. Thus, "[t]aking

14

Plaintiff's allegations as true" the Court found that Plaintiff had stated a prima facie case showing that the defendants expressly aimed their conduct at Plaintiff. "Here, a software developer alleges that foreign software developers and computer manufacturers intentionally stole its copyrighted software—the very basis of its business—and conspired to distribute it to Chinese-speaking customers throughout China and the United States." This constituted intentional express aiming under the Calder test. *Id.* at 9. "When Defendants commit intentional copyright infringement with knowledge of plaintiff's residency, … they 'should reasonably anticipate being haled into court' in the forum in which Plaintiff resides, as the brunt of the injury takes place there." *Id.*

Here, too, the infringement of Plaintiff's videos was expressly aimed at harming Plaintiff in its business. Defendants permitted the uploading of Plaintiff's videos to their websites with the intent that they would be distributed to and viewed and downloaded by Defendants' Premium members – its paying users. Here, too, the Defendants' websites continue to infringe on Plaintiff's copyright, with knowledge that Plaintiff is an Iowa company. Further, Defendants through these websites knowingly seek Plaintiff's customers in Iowa. This is express aiming, and this court should so find.

The last element in the Ninth Circuit's purposeful avalment test is the harm likely to be suffered in the forum state. To satisfy this element, "the 'brunt' of the harm need not be suffered in the forum state," but only "a jurisdictionally sufficient amount of harm." *CYBERsitter*, at 10. Further, Plaintiff satisfies this element if it alleges that defendant's intentional act has 'foreseeable effects' in the forum. Id. The *CYBERsitter* court quoted *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010): "In this case, it was foreseeable that [plaintiff] would be harmed by infringement of its copyright, including harm to its business

reputation and goodwill, and decreased business and profits. It was also foreseeable that some of this harm would occur in the Forum, where [plaintiff] was known to reside." *Id*. The court held that plaintiff had met the third and last prong of the test, as it alleged that the misappropriation of Plaintiff's copyrighted material would cause harm to Plaintiff in California, and that all of the defendants knew Plaintiff was an American company and that their actions would cause injury to Plaintiff in California. The court thus denied the Motion to Dismiss.

This Court should do the same. It was imminently foreseeable to Defendants that Plaintiff would be injured by the unrecompensed offering of Plaintiff's videos on Defendants' websites. Defendants knew that Plaintiff would lose profits by their acts, that Plaintiff was an American business and that it was located in Iowa. Further, because Plaintiff has sold many of its videos to Iowa residents, there is a definite impact in Iowa in this regard as well. Thus, this Court should also find that Plaintiff has made a prima facie case showing that it has specific personal jurisdiction over the Defendants.

The cases that Defendants cite to support their motion are radically different factually, and thus don't apply here. In *AmerUs Group Co. v. Ameris Bancorp*, 2006 WL 1452808 (S.D. Iowa 2006), the defendant was a Georgia corporation with no business contacts in Iowa. Although it had a website, only persons already customers and who paid a monthly fee could use the Internet interactive services, and only persons who visited one of its local banks in Georgia, Florida, or Alabama could be a customer. Thus, a resident in Iowa could not do business with the company while in Iowa. Here, on the other hand, Defendants are open to doing business with any and all residents of Iowa, who won't even have to leave the comfort of their homes to do so. Discovery will show that Defendants do indeed have customers in Iowa.

16

The other case Defendants cite, *Dryspace, Inc. v. Crawlspace Concepts, L.L.C.*, 2011 WL 1113585 (N.D. Iowa 2011) is likewise distinguishable since the defendant there never did any business with a resident of Iowa and its website was not of the interactive type found in this case.

Notably, Defendants fail to cite the Eighth Circuit Court of Appeals' decision in *Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1391 (8th Cir. 1991). The case, though not involving Internet activity, demonstrates that the Eighth Circuit would likely follow the reasoning in *CYBERsitter* and find specific personal jurisdiction in this case. Like the California court, the Eighth Circuit there applied the *Calder* "effects" test, and adopted it as an additional test for specific jurisdiction. *Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1390-1391 (8th Cir. 1991).

In *Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, the Plaintiff, Dakota Industries, claimed trademark infringement by Dakota Sportswear. Sportswear had no offices, outlets, agents or employees in the forum state (South Dakota), and had never marketed or advertised in South Dakota, and never directly or indirectly shipped products into South Dakota. The evidence showed, however, that the end purchasers of Sportswear's clothing were located throughout the entire United States. Further, major chains carried Sportswear clothing, and thus, if the chains to which Sportswear sold had outlets in the forum state (South Dakota), Sportswear's clothes could be shipped there.

The Court cited *Calder* for the proposition that the defendant's lack of control over distribution of the product in the forum state would not bar jurisdiction when the plaintiff has alleged an intentional tort. *Id.*, citing *Calder* at 789-90, 104 S.Ct. at 1487. The evidence showed that there was some "passing off" (where the deceived customer buys the defendant's product believing it is the plaintiff's) of Sportswear's infringing clothing in South Dakota. This fact,

17

along with the fact that Industries' principal place of business was in South Dakota, demonstrated that "Sportswear's actions were uniquely aimed at the forum state and that the 'brunt' of the injury would be felt there, as required by *Calder*. Under these circumstances, Sportswear 'must reasonably anticipate being haled into court' in South Dakota." *Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, 946 F.2d at 1391. The Court therefore held that Plaintiff had made a prima facie showing of personal jurisdiction, reversed the dismissal and remanded for further proceedings.

In *Dakota*, the Eighth Circuit also made special note of two Ninth Circuit Court of Appeals cases that held that jurisdiction may be proper when defendant's only contact with the forum state is the "purposeful direction" of a foreign act having effect in that state: *Brainerd v. Governors of Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir.1989); *Haisten v. Grass Valley Medical Reimbursement*, 784 F.2d 1392, 1397 (9th Cir.1986). It is safe to presume that the court would have followed the analysis in *CYBERsitter* and came to the same conclusion: that exercising personal jurisdiction is proper.

The facts of this case, are comparable to those in *Dakota*, *CYBERsitter*, *Neogen* and *Bird v. Parsons*, where the courts found specific personal jurisdiction could be exercised over the defendants. Here, as in the Internet cases, Defendants maintain interactive websites where users in the U.S. can join as members to see Plaintiff's infringed videos, can access the website 24/7, can generate their own content to reside on Defendants' host computer, all causing injury to Plaintiff, an Iowa corporation. Further, Defendants are accepting the business of Iowa residents, offering Iowa residents the opportunity to become members and so view upgraded videos and download premium versions of Plaintiff's films, many involving the pirated videos copyrighted and owned by Plaintiff. By these activities, Defendants have purposefully directed their activities

at Iowa residents and purposefully availed themselves of the privilege of doing business in Iowa as required for specific jurisdiction.

For the court to exercise specific jurisdiction, it must also find that the plaintiff's action arises out of or relates to the defendant's forum-related activities. *Lakin, supra*. Here, the activities of Defendants – allowing Iowa residents to view the Plaintiff's pirated videos – are exactly what Plaintiff sues for in this action. Consequently, the elements of specific personal jurisdiction are met in this case, and the Court may exercise jurisdiction over Defendants. The court should therefore deny the Motion to Dismiss.

### D. The Court May Exercise General Personal Jurisdiction Over Defendants

Even if the Court finds no specific personal jurisdiction over Defendants exists, the facts support a finding of general jurisdiction.

In *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704 (8th Cir.2003), the court held the Zippo test insufficient by itself to determine the propriety of exercising general jurisdiction. *Id*. at 711-12. Although the court found that the *Zippo* test was the starting point for determining if a website created general jurisdiction for a defendant, the court directed that after looking at the nature and quality of a website (that is, applying the *Zippo* test), courts must then weigh the quantity of the defendant's contacts via its website. *Lakin*, 348 F.3d at 712. Thus, under *Lakin*, a defendant with a website that is interactive in nature, and with a quantity of contacts with the forum, may be subject to the exercise of general jurisdiction in the forum.

Addressing the issue of general jurisdiction, the Defendants compare the case before this court to *Lindgren v. GDT, LLC*, 312 F.Supp.2d 1125 (S.D. Iowa 2004). There the Iowa plaintiff sued a California company for trademark infringement. The defendant maintained a website and sold some of its infringing products to Iowa residents. The court found that Iowa did not have

jurisdiction. The case does not apply here, however, because the court based its decision on factors not present in this case.

First, the court noted that defendant GDT's website consisted primarily of single point-of-sale transactions rather than continuous, long-term contracts. Visitors to the site, even purchasers, could establish an online account, but it entailed no continuing obligations. The *Lindgren* court contrasted this fact with the facts in *Lakin*, where the defendant maintained a sophisticated, interactive twenty-four hour Web site which allowed users to exchange information with the host computer, and establish accounts and apply online for loans. *Id*. at 1130.

The situation here is like that in *Lakin*, not *Lingren*. Here, Defendants' websites allow users to establish membership which entitles the purchaser to ongoing communication with Defendants' host computer for the purposes of downloading and viewing videos, generating their own content (uploading videos) all on a twenty-four hour basis. As alleged by Plaintiff in its Complaint, Defendants offer ongoing premium membership, whereby the websites' users have an ongoing commitment to a monthly fee payable to Defendants. This is the type of systematic, continuous relationship found in *Lakin*, not the occasional sales found in *Lindgren*.

Further, the *Lindgren* court also found it significant that the sales were goods under the Uniform Commercial Code. Under the U.C.C., the sales to Iowa residents were not made to Iowa. Instead, they were "F.O.B. seller," so that the title passed to the Iowa buyer in California when defendant delivered the items to FedEx for shipment. Here, the user is streaming videos to his home computer in Iowa, and there is no "F.O.B." term in the contract, as nothing is shipped. Thus, this element for denying jurisdiction does not exist here.

20

The facts in the Eighth Circuit's decision in *Lakin* provide a closer comparison for the analysis of Defendants' contacts. In *Lakin*, the defendant, Prudential Savings, was located in Georgia. The Plaintiff sued in Missouri. The court found that although Prudential had no offices in Missouri, it did have a website and did have loans with Missouri residents. The court found that the website was sophisticated, provided interaction such that the user could exchange information with the host computer, allowed consumers to establish and access secure online accounts, calculate home mortgage rates and complete online applications for home equity loans and lines of credit. Thus, "[t]hrough its Web site Prudential Savings could have continuous, significant contacts with Missouri residents. In fact, because its site is available twenty-four hours a day, it is possible for Prudential Securities 'to have contacts with the [State of Missouri] that are 'continuous and systematic' to a degree that traditional foreign corporations can never even approach.'" *Lakin,* 348 F.3d at 712. The court also found it notable that the financial interactions with users were not single point of sale transactions, but involved loans measured over years, meaning that the defendant created continuous long-term contacts with its users. *Id.* at 708.

Here, Defendants' websites are highly interactive. They are sophisticated websites that provide interaction such that the user can exchange videos, uploading their own and downloading others. They thus exchange information with the host computer just as in *Lakin*. Further, with the premium membership (which Plaintiff has alleged Defendants offer), users don't have one single point of sale transaction. Instead, they have ongoing and continuous obligations to Defendants. Thus, like the defendant in *Lakin*, Defendants here have the quality and nature of contacts to subject them to general jurisdiction.

21

In addition, the relationship here between Defendants' websites and their users is akin to a more traditional, and thus more familiar, contract – the magazine seller and its subscribers. Like the magazine subscriber, users receive the content right in their own state and their own home. The magazine seller sends it by mail, the website owner transmits it at the users behest over the Internet. The Supreme Court has found the magazine subscription contract to be the basis for jurisdiction in a state where a corporation continuously had customers in the forum's market, and has held that under the circumstances, the defendant "must reasonably anticipate being haled into court there in a libel action based on the contents of its magazine." *See e.g.*, *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 780-781, 104 S.Ct. 1473, 1481-1482 (1984). Likewise here, Defendants' continuous exploitation of the Iowa market would certainly make it reasonable to anticipate being haled into court here regarding the infringement of Plaintiff's copyrights and trademarks.

The next step in determining general jurisdiction is whether the defendant has the quantity of contacts necessary to allow the court to exercise general jurisdiction over defendant. *Lakin*, 348 F.3d at 712. The relevant inquiry regarding quantity of contacts is not whether the percentage of a company's contacts is substantial for that company; rather, the inquiry focuses on whether the company's contacts are substantial for the forum. *Lakin*, 348 F.3d at 709.

Here, as in *Lakin*, the quantity of contacts in Iowa – how many users, how many web visits, how many premium members and other information, is as yet unknown. This is not publicly available information. Thus, as in *Lakin*, (unless the court finds specific jurisdiction exists over Defendant) the Court must permit Plaintiff to undertake jurisdictional discovery.

### E.  The Court Should Permit Jurisdictional Discovery by Plaintiff

The Court in *Lakin* also established when a Plaintiff should be permitted jurisdictional discovery if there is not sufficient evidence to determine the extent and nature of the defendant's contacts with the forum state without it. *Lakin*, 348 F.3d at 712-713. If the record does show that asserting jurisdiction would be reasonable and would not offend notions of fair play and substantial justice (that is, it would comport with due process), then Plaintiff should be permitted discovery on such things as the number of times Iowa residents have accessed the websites, the number of Iowa residents that have signed on for premium services, and any other data showing interaction between Defendants' websites and Iowa residents. *Lakin*, 348 F.3d at 712-714.

Here, it would comport with due process to exercise jurisdiction over Defendants. The Exhibits attached hereto show that U.S. customers make up 37 to 40 percent of the Defendants' world-wide market. Since the U.S. population is only 4.5% of the world population,[2] this means that the "company's contacts are substantial" for the U.S. forum. At this time, there is no publicly available evidence of the extent of Defendants' contacts specifically with Iowa.

In *Lakin*, the court found that the interest of the state in providing a forum was an element of finding due process. 348 F.3d at 713. Here, Plaintiff is an Iowa corporation whose trademarks and copyrights are being infringed by Defendants. Thus, Iowa has a significant interest in providing a forum for redress of Plaintiff's rights. Further, Defendants have taken the position that despite the huge U.S. audience for their websites, they cannot be sued in the U.S., apparently asserting that they can only be sued in the Philippines. Because there are certain to be residents in Iowa who do business with Defendants' websites, and because Plaintiff, the corporation suffering the injury because of Defendants' websites, is located here in Iowa, exercising personal jurisdiction in Iowa does comport with due process.

---

[2] The world population is approx. 6.96 billion and the population of the USA is approx. 311 million. http://www.census.gov/main/www/popclock.html

23

The *Lakin* court also considered the burden on the defendant to travel here. *Lakin*, 348 F.3d at 713. Again, however, Defendants have substantial business in the United States. For them to contend that even though a 37 to 40 percent of their websites' business is from the U.S., they may not be sued here does not show "fair play and substantial justice." Because the Defendants have contacts with Iowa, the burden is not overly heavy on Defendants and due process permits them to be called to defend the clams here.

Because the evidence on the record thus far shows it would be reasonable and would not offend notions of fair play and substantial justice, the Court "must" allow jurisdictional discovery to permit Plaintiff to discover information regarding Defendants' contacts with Iowa residents if the Court determines that the current record does not establish personal jurisdiction over Defendants.

## II. Plaintiff's Standing to Assert Copyright and Trademark Infringement

### A. Plaintiff is the Proper Assignee of all Rights in and to the Copyrighted and Trademarked Products and The Right to Sue for Accrued Infringement, and Thus Has Standing to Sue

Plaintiff alleged in its Complaint the ownership of the copyrights and trademarks at issue here, stating that "[a]ll copyrights and trademarks claimed by Fraserside IP LLC have been assigned in their entirety to Fraserside IP LLC by the parent or sibling company and transfer documentation has been submitted to the respective government offices." Complaint, ¶ 5, p. 6. Defendants claim that because a transfer is not showing in the public records that the Plaintiff has no standing. Plaintiff re-asserts that it is the rightful owner of all copyrights and trademarks claimed, and Plaintiff has witnesses and documentation to prove it. Plaintiff's ownership rights are not bare assignments of the right to sue but all rights and ownership of the copyrights and trademarks and all transfers have been delivered to the respective copyright and trademark

24

offices. Plaintiff acquired its full rights through the Assignment of Copyright and Common Law Copyright Rights attached hereto as Exhibit C.

The Assignment "sells, assigns, transfers and conveys to [Plaintiff] all of [the] right, title and interest to the Copyrights, together with the goodwill of the business associated with the Copyrights." In addition, the Assignor assigned to Plaintiff "the right to sue for and receive all damages accruing from past infringements of the Copyrights herein assigned."

The generally accepted law is that an owner of an exclusive right in the copyrights is entitled to sue for an infringement of that right which was committed prior to the assignment of the copyright, provided that the document granting the copyright explicitly that it includes the causes of action with respect to that right, accrued prior to the grant. *See Abkco Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir.1991) ("Thus, a copyright owner can assign its copyright but, if the accrued causes of action are not expressly included in the assignment, the assignee will not be able to prosecute them."); *Two Pepper Music v. Rhino Records, Inc.*, 173 F.3d 846 (2d Cir. 1999)("Where the assignment of an exclusive right under a copyright expressly includes the right to prosecute accrued claims for infringement, that right passes to the assignee."); *Getty Images (US) Inc. v. Advernet, Inc.*, --- F.Supp.2d ----, 2011 WL 2732202 (S.D.N.Y. 2011); see also Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 10.03.

The cases cited by Defendants agree. For instance, the Ninth Circuit in *Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881 (9th Cir. 2005) acknowledged and agreed with the holding in *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, *supra*. Thus, the law provides that because Plaintiff has both the current ownership of the copyrights and the right to sue for past infringement, it has standing in this case. The court should thus deny the Motion to Dismiss.

The same is true with respect to Plaintiff's trademark infringement claims. Plaintiff is the

assignee of the rights to the trademarks, and to the business associated with it, as cases cited by Defendants require. See *International Society for Krishna Consciousness of Western Penn., Inc. v. Stadium Authority of the City of Pittsburgh*, 479 F. Supp. 792 , 797 (W.D. Pa. 1979). See also, *Specht v. Google, Inc.,* 660 F.Supp.2d 858 (N.D. Ill. 2009). Plaintiff attaches the assignment as Exhibit D. Thus Plaintiff has standing to assert the trademark infringement claims.

### B. The Allegations of Transfers in Violation of Court Orders and Without the Knowledge of the Receiver Are Untrue and Do Not Support Dismissal

Defendants next point to an order of a state trial court in Nevada in which Private Media Group, Inc., the parent of Fraserside IP LLC and Fraserside Holdings, is a party. Defendants assert that the court there purportedly ordered Private and its subsidiaries not to dispose of assets except in the ordinary course of business. Defendants also assert that a receiver was appointed for the management of Private and its subsidiaries. Defendants then assert that Private and its subsidiaries have made transfers that were not permitted under the court order, and that the Receiver and counsel for the Receiver were not aware of the transfer of intellectual property to Plaintiff and the pursuit of this infringement case.

Even assuming all this were true (it is not, as shown below), Defendants have no standing to assert any rights as a result of the foregoing. A party "cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Hodak v. City of St. Peters*, 535 F.3d 899, 904 (8th Cir. 2008). Thus, Defendants cannot be heard to complain about the alleged violation of the court order, or of the receiver's <u>alleged</u> lack of knowledge of the transfer of the copyrights and trademarks or alleged lack of knowledge of this case.

Defendants are wrong in their assumption that the transfers of copyrights and trademarks to Fraserside IP LLC were in contravention of the Court's order. No assets were disposed of and

the actions were within the ordinary course of business. No director opposed the creation of Fraserside IP LLC or the transfer of copyrights and trademarks to the Iowa company. As the attached affidavits demonstrate, Fraserside IP LLC was established, and the copyrights and trademarks were transferred to it without objection from any of the officers of Private Media Group Inc. and its associated companies. Exhibits E-H, Declaration of Berth Milton, CEO, Declaration of Johan Gillborg, CFO; Declaration of James Moran, In House Counsel; Declaration of Philip Christmas, Financial officer. Clearly, Fraserside IP LLC is the owner of all copyrights and trademarks claimed, and has standing to bring this lawsuit.

Defendants are also wrong in their assertion that the Receiver knew nothing of this action. Defendants' counsel called the Receiver's counsel out of the blue asking questions, and the Receiver's counsel answered that **he** knew nothing of the transfer to Fraserside IP LLC or of the case at the time of the call on October 14, 2011 and assumed the Receiver was also unaware. However, the Receiver was aware of this litigation and supportive of the same, and the Receiver's counsel sent a letter to Defendants' Attorney Fray-Witzer to so state. Exhibit I, Letter from Thomas Kummer to Defendants' counsel. Surprisingly, Defendants' Attorney Fray-Witzer did not follow up on the October 14, 2011 phone call before filing his affidavit. Had this been properly followed up, Fray-Witzer would have been informed that the Receiver knew of the lawsuit.

The Receiver did and does know of the transfer and of the pursuit of this and other infringement cases. Exhibit J, Declaration of Eric Johnson, Director and Court Appointed Receiver. As his declaration reveals, he was not only aware of, but fully supported the prosecution of all of the lawsuits filed by Fraserside IP LLC in the Northern District of Iowa. See Declaration of Eric Johnson, ¶ 6. This and other actions in the Northern District of Iowa seek to

protect the assets and income production of the companies. All of this reveals that there is truly no basis for asserting that Plaintiff does not have standing because of the receivership.

Because the Receiver and all of the officers of Private and Holdings know of and support this lawsuit by Fraserside IP LLC, Defendants have no grounds and no standing to complain. Defendants are simply attempting to throw up any roadblock to Plaintiff's ability to assert its rights, hoping thereby to prolong Defendants' lucrative infringement of Plaintiff's copyrights and trademarks, all to Plaintiff's detriment. The Court should rule against Defendants, denying the Motion to Dismiss forthwith.

## CONCLUSION

Boiled down to its essence, Defendants' argument is that claims for infringement of U.S. trademarks and copyrights, rightfully owned by an Iowa company, and infringed upon to produce income from Internet users and advertisers in the U.S., may not be litigated in the United States. This argument is baseless. Defendants, by their actions targeting U.S. internet users and advertisers and infringing the copyrights and trademarks of an Iowa company, are properly and fairly under the jurisdiction of this Court. The due process requirements for Defendants to be haled into this court have been met.

Plaintiff's Complaint and the exhibits to this resistance show that Plaintiff rightfully owns the claimed United States Copyrights and Trademarks and therefore has standing to bring this action. The Receiver knows of and approves the assignments of the copyrights and trademarks, and approves of this action to protect the assets and income of the receivership companies. Defendants cannot use the receivership to avoid the exercise of jurisdiction over them by this Court.

Defendants have not met their burden and the Motion to Dismiss should be DENIED.


DATED:  November 18, 2011    Respectfully submitted,


           By:


              /s/ Chad L. Belville
              cbelville@azbar.org
              Chad  Belville, Attorney at Law
              Attorney for Plaintiff
              Iowa Bar # 015731

Physical Address         304 East Beth Drive
              Phoenix, AZ 85042

MAILING ADDRESS:       P.O. Box 17879
              Phoenix, AZ 85066

              Telephone:  602-904-5485
              FAX:  602-297-6953
              E-mail cbelville@azbar.org
              ATTORNEY FOR PLAINTIFF




Certificate of Service


I, Chad Belville, Attorney for Plaintiff, hereby certify that on November 18, 2011 a copy of this Resistance to Defendant's Motion to Dismiss was served upon the Attorneys for Defendants, listed as Connie M. Alt, Jennifer Rinden, Valentin Gurvits, and Evan Fray-Witzer, through the Courts Electronic Case Filing System.


<u>/s/ Chad L. Belville</u>


29

EXHIBIT LIST

Exhibit A                Alexa stats for US use of websites

Exhibit B                Eskimotube Terms of Use found on Tjoob Website

Exhibit C                Assignment of Copyrights

Exhibit D                Assignment of Trademarks

Exhibits E through H  Declaration of Berth Milton, CEO, Declaration of Johan Gillborg, CFO;
                         Declaration of James Moran, In House Counsel; Declaration of Philip
                         Christmas, Financial officer

Exhibit I                Letter from Thomas Kummer to Defendants' counsel

Exhibit J                Declaration of Eric Johnson